In The

# United States Court of Appeals for the Third Circuit



## 13-4002

TAYLOR STOKES, PERSONAL REPRESENTATIVE OF THE ESTATE OF
MR. RAYMOND EDWARD STEVENS

*Plaintiff-Appellant,*

v.

AC&S, INC. et al,

*Defendants-Appellees.*

---

*Appeal from the Judgment dated July 29, 2011 [with an additional final Order dated
August 12, 2011 that amends the Order of July 29, 2011] from the United States District
Court for the Eastern District of Pennsylvania at No.2-09-cv-91897-ER.*

---

## BRIEF AND APPENDIX FOR PLAINTIFF-APPELLANT
### Volume I of II (pages 1a-14a)

PAUL A. WEYKAMP, ESQ.
*Attorney for Plaintiff-Appellant*
Suite 2
16 Sternersen Lane
Hunt Valley, MD 21030
(410) 584-1005

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ i

TABLE OF CITATIONS ...................................................................... ii

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF RELATED CASES AND PROCEEDINGS ............... 4

SUMMARY ....................................................................................... 4

ARGUMENT ..................................................................................... 4

    I.  Summary Judgment Standard ..................................................... 4

    II.  Summary Judgment Standard Applied ....................................... 5

CONCLUSION ................................................................................ 10

# TABLE OF AUTHORITIES

Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F. 3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 – 248 (1986))........... 5

Pignataro v. Port Auth. of N.Y. & N.J., 593 F. 3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moesssner, 121 F. 3d 895, 900 (3d Cir. 1997).......................... 4

**Statutes**

FRCP 3 ................................................................................................................. 1

FRCP 56(a)........................................................................................................... 5

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| Taylor Stokes, | * | |
| Executor of the Estate of Raymond Stevens | * | |
| | * | |
| Appellant | * | |
| | * | Case No. 13-4002 |
| v. | * | |
| | * | |
| AC&S, Inc. et al | * | |
| | * | |
| Appellees | * | |

# APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

## JURISDICTIONAL STATEMENT

Appellant Taylor Stokes files this appeal from two orders entered on July 26, 2011 in the United States District Court for the Eastern District of Pennsylvania granting summary judgment to Defendants Viacom, Inc. and International Paper Corp. These orders erroneously found that there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law. As will be discussed in more detail below, there is a genuine issue of material fact that should appropriately be decided by a jury as the finders of fact.

1

On September 5, 2013 all claims against all viable defendants were dismissed. The case was marked closed, making the time for appeal ripe. Appellant timely filed his notice of appeal on October 1, 2013. Appellant takes this appeal as of right pursuant to Rule 3 of the Federal Rules of Civil Procedure. Appeal to this court is appropriate as the underlying case was decided in the United States District Court for the Eastern District of Pennsylvania.

## STATEMENT OF ISSUES

The issue in this appeal is whether there is a genuine issue of material fact. In his underlying complaint, Appellant alleged that Mr. Raymond Stevens developed mesothelioma and subsequently died as a result of his exposure to asbestos containing products manufactured by Defendants Viacom, Inc. (hereinafter Viacom) and International Paper Corp. (hereinafter IP). Specifically, Appellant alleged exposure to Micarta, an asbestos containing product which Viacom and IP had a joint consortium to manufacture.

On March 22, 2011 IP filed a motion for summary judgment arguing that "Plaintiff has failed to identify exposure to an asbestos-containing product manufactured, supplied, or distributed by IP." (App. 187a). IP supported their arguments with an affidavit from Mr. David E. Baldwin stating that Westinghouse Fire Retardant Decorative Micarta was never approved for us on U.S. Naval Vessels. (App. 186a).

2

On March 22, 2011, Viacom also filed a motion for summary judgment arguing that "Plaintiff has produced no viable evidence that he was exposed to asbestos in connection with any product or equipment manufactured, distributed, or sold by Westinghouse" (App. 35a). In their motion, Viacom also relied on the affidavit of Mr. David E. Baldwin. (referenced in Appellee's brief at App. 38a and located at 78a).

On April 12, 2011 Appellant filed a Response in Opposition to IP's motion for summary judgment and a Response in Opposition to Viacom's motion for summary judgment. (App 208a and 93a). In his responses, Appellant argued that in fact he had provided evidence of his exposure to products manufactured by IP and Viacom.    Appellant supported his argument with the sworn deposition testimony of Mr. Raymond Stevens of August 25, 2010 in which Mr. Stevens identified the product Micarta, and proceeded to describe the asbestos containing product. (App. 210a and 98a).

On July 26, 2011 the court granted Viacom and IP's motions for summary judgment. The orders were nearly identical and in both orders, the Court states that "Mr. Stevens alleged that he worked with Micarta panels, but testified inconsistently as to whether knew (sic) that these panels contained asbestos" (App. 12a). The court then cites to the affidavit of Mr. David Baldwin and its assertion that only non-asbestos, paper-based Micarta and other similar laminates were

3

commonly used aboard Navy ships. The court ultimately found that Appellant "failed to present evidence to controvert the Defendant's evidence that Micarta asbestos-containing panel was not approved for use on Navy ships" and granted defendants' motions for summary judgment. (App. 13a and 7a).

The court in this matter inappropriately decided that there was no genuine issue of material fact.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this court, and Appellant is unaware of any other case or proceeding that is in any way related.

## SUMMARY

Summary judgment in this case was inappropriate because there exists a genuine issue of material fact, especially when the evidence is viewed in a light most favorable to the plaintiff. It is appropriate for the jury, as the finder of fact, to weigh the conflicting testimony of the parties as to whether Mr. Raymond Stevens was exposed to an asbestos containing product manufactured by Defendants.

## ARGUMENT

I. Summary Judgment Standard

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F. 3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 – 248 (1986)).

In undertaking the analysis, the court is to view the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the non-moving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F. 3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moesssner, 121 F. 3d 895, 900 (3d Cir. 1997)).

## II. Summary Judgment Standard Applied

This case consists of opposing parties using sworn testimony to support their positions – Mr. Stevens in his deposition identifying and describing asbestos containing Micarta as a product that he worked with and around (App. 210a and 98a), and Defendants' use of Mr. David Baldwin's affidavit stating that asbestos containing decorative Micarta was not in use on these ships (App. 186a and 138a). The issue of Mr. Stevens' exposure to Micarta is material because his entire case against defendants Viacom and IP hinges upon it and as such it will certainly affect

5

the outcome of the litigation. The issue is "genuine" because the evidence is such that a reasonable jury could conclude that f Mr. Stevens' was exposed to asbestos containing Micarta.

Mr. Stevens identified and described the asbestos containing product Micarta in the following relevant deposition testimony, which was included in his response to Appellees' Motions for Summary Judgment:

Description

Q:    Do you know the brand name or manufacturer of any of that material that was used aboard the Koelsch, the new stuff that went in?
A:    I don't – I know some of the bulkhead – well, I don't know if you want to call it insulation or not, but – oh, what the heck was that thin paneling. It come in a 4-by-8 green – Mako, Mika, some kind of paneling that slipped in the thing, in the racks.
Q:    Where did it slip in between?
A:    Usually it was used for dividing compartments and things, it slipped into a rack.
Q:    You think it contained asbestos?
A:    I know it did.
Q:    How do you know it did? Did it have asbestos on it?
A:    Uh-huh.
Q:    Or did it say asbestos on the packaging?
A:    On the side of it. It wasn't packaged, it was banded. It was a light-green-looking material, and it would fit in between metal braces and you would slide it in there and cut it around the corners, you know, wherever you had to go bend it in and stuff like that.
Q:    Well, did you see them removed, both removed and installed?
A:    I saw them installed, yes. I installed them – I helped install them myself, put them in there, cut them and put them in.
Q:    Now, if I were to look at a cross-section of that panel, was it one solid panel or was it sort of a composite board?
A:    It's kind of like a pressed composite bard with two – you know, two solid on each side. The names were written on the ends of it on the corners.

6

And they came in and they brought them aboard in bands, banded with a metal band around them in pallet loads, and they'd cut them off and slide them into sections.

Q:    You said it was a composite – type board. Was that light green –

A:    Throughout.

Q:    paneling on both sides?

A:    Yes.

Q:    What did the center look like?

A:    Well, when you cut it or when you grind it down, it was green also. It looked like – I don't know. Have you ever cut a piece of foam?

Q:    Sure.

A:    Okay. That's what it reminded me of, with the solider outside, and the inside was like a sound barrier-type thing.

Frequency

Q:    How often did you see individuals installing this bulkhead panel on the Koelsch?

A:    Until the job was completed, probably on a daily basis.

Q:    So you never actually handled the bulkhead panel?

A:    Yes, I've handled them also. Any time you're doing a job like that that requires some – a little bit of skill that's been done before, you can't rely on your lower-rated people to do it if they don't know what they're doing. You show them how to do it and you'll actually show them how to cut it or how to put it in there, how it fits, and so forth.

Q:    So you personally cut the panel?

A:    Yes.

Asbestos content knowledge

Q:    So at some point he Navy told you that you that there were certain products that contained asbestos that you were no longer permittedto use on board any vessels?

A:    Yes.

Q:    And as we sit here today, you recall this bulkhead panel as one of those items?

A:    Correct.

On which ships

7

Q:     Okay. The bulkhead panels that you saw on the Cambria or the Simon
Lake, would you describe that the same way that you described the paneling
on the Koelsch –
A:     Yes.

Identification:

Q:     All right. Well, Let me – I'm going to take a step back here, Mr.
Stevens, and I'm going to go back to the USS Cambria that you mentioned
you had been on for three years. What products if any do you believe you
may have worked with or around on the USS Cambria that you believe
contained asbestos?
A:     … I never did mention the bulkheads.
Q:     What bulkheads?
A:     The green Mikada – Mickeda stuff, the partitions. I call them
bulkheads. Partitions. Whatever you want to call them. Where you made
state rooms and things out of.
Q:     Is there any name – what name if any do you associate with this
particular product?
A:     All I know is Mikida, Mikeda, or something like that, was written on
the edge of it, on the side of the daggone material. And I can't pronounce the
name of it. Mikada, M-i-k-a or M-i-c-k-a, or something.

Physical description of the Product

A:     It was a light-green sheet of a 4 by 8 sheet that you made partitions
out of, slid them in through metal brackets, two-in brackets, and held them
onto the deck and then you would form a bulkhead. And then if you had to
cut it to different sizes, maybe you needed 2 foot instead of four, and so
forth, or you needed to shape it around a wall, or outside wall, you would
have to cut it back in like this, or cut in your corners.
Q:     Okay. What was the surface of this partition? What was the texture of
the surface?
A:     …it was smooth green inside – green sides of it.
Q:     All right. And was there anything – what was inside of it?
A:     A material, spongy material. It looked like a sponge. When you cut it,
it would look like a foam cut, a foam material in there.

8

Use of the Product

Q:    Did you ever have occasion to cut it?

A:    Occasionally, yes.

Q:    And how would you cut this light green partition that you described?

A:    With a knife or a hacksaw or anything that was available that would do the job. Sometimes – we didn't have jigsaws and things back then. It was all done by hand, mostly.

Air Quality/Dust Creation

Q:    And when you would cut this, what kind of air conditions or what kind of atmosphere condition would that create?

A:    Well, we didn't have no air conditioning. We had dust. That's what we had. It was – it was friable. All of it was friable if you was in there working with it, floating around.

Q:    When you say friable, what do you mean by that?

A:    I mean it floated in the air, anything friable to me, it floats, like cigarette smoke is friable, anything like that. And you're breathing it in.

It is for the finders of fact to weigh the testimony of Mr. Stevens and the affidavit of Mr. Baldwin to decide the outcome of this case. The underlying court found that "Plaintiff cannot create an issue of material fact by citing to inconsistencies in Mr. Stevens testimony." (App. 7a and 13a).Whether or not Mr. Stevens' testimony is inconsistent and whether Mr. Stevens' sworn testimony regarding the products that he worked with is to be believed over the affidavit of Mr. Baldwin is a question for the jury. Appellant has provided evidence of Mr. Stevens's exposure to Appellees' products through sworn testimony. In granting summary judgment, the lower court failed to view the facts in the light most

favorable to the plaintiff and overlooked a genuine issue of material fact that should have been decided by the jury.

## CONCLUSION

Summary judgment against Viacom and IP was inappropriate. Appellant asks that his case be reinstated against these Appellees, and respectfully requests any other relief that the court deems appropriate.

Respectfully Submitted,

*/s/ Paul A. Weykamp*
Paul A. Weykamp
Attorney for Appellant
16 Stenersen Lane, Suite 2
Hunt Valley, MD 21030
Tel.: 410.584.0660
Fax: 410.584.1005

## CERTIFICATION

I hereby certify that on the 13th day of January 2014 I did cause a copy of the foregoing to be filed electronically with via ECF and the requisite number of identical hard copies filed with the court and simultaneously served upon all counsel of record.

*/s/ Paul A. Weykamp*
Paul A. Weykamp

11

## CERTIFICATION OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to LAR 46.1 that the attorney whose name appears on the Brief of the Appellants, was duly admitted to the Bar of the United States Court of Appeals for the Third Circuit on October 6, 2011 and is presently a member in good standing at the Bar of said Court.


Dated: January 13, 2014                 */s/ Paul A. Weykamp*
                                        Paul A. Weykamp

## CERTIFICATION OF WORD COUNT

This brief complies with the page length requirements of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2, 316 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman font.

*/s/ Paul A. Weykamp*
Paul A. Weykamp

## VIRUS CHECK COMPLIANCE

This document has been scanned for viruses and is reported by Symantec Antivirus Corporate edition ® to be virus free as of the date it was scanned. All reasonable measures have been taken to protect all of *Wright Appellate Services, LLC* documents, but we cannot guarantee against viruses that have yet to be discovered. The PDF file is identical to the hard copy.


*Frederick W. Wright*
_____
Frederick W. Wright
*Wright Appellate Services, LLC*
1015 Chestnut Street, Suite 517
Philadelphia, PA 19107
(215) 733-9870
Email address: appeals@wrightappellate.com

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Notice of Appeal, filed October 1, 2013 | 1a |
| Order of District Court Granting Viacom, Inc.'s Motion for Summary Judgment, filed July 26, 2011 | 3a |
| Order of District Court Granting International Paper Corp.'s Motion for Summary Judgment, filed July 26, 2011 | 10a |
| Docket Entries from the Eastern District of Pennsylvania | 15a |
| Defendant CBS Corporation's Motion for Summary Judgment | 32a |
| Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment | 35a |
| Exhibit A to Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment (**Excerpt of Aug 25 Depo of Ray Stevens**) | 48a |
| Exhibit B to Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment (**Plaintiff's Answers to CBS Interrogatories**) | 53a |
| Exhibit C to Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment (**Plaintiff's Answers to CBS Requests for Admission**) | 62a |
| Exhibit D to Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment (**Affidavit of Douglas Ware**) | 66a |
| Exhibit E to Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment (**Excerpt of Aug 26 Depo of Ray Stevens**) | 69a |
| Exhibit F to Memorandum of Law in Support of Defendant CBS Corporation's Motion for Summary Judgment (**Affidavit of David Baldwin**) | 77a |

**Page**

Exhibit G  to Memorandum of Law in Support
of Defendant CBS Corporation's Motion for
Summary Judgment **(CBS Objections and
Replies to Interrogatories)**.............................. 80a

Exhibit H to Memorandum of Law in Support
of Defendant CBS Corporation's Motion for
Summary Judgment**(Memo of David Sturm to
Tom McCaffey)** ................................................ 86a

Plaintiff's Response in Opposition to Defendant
CBS Corporation's Motion for Summary
Judgment................................................................ 93a

Exhibit A to Plaintiff's Response in Opposition
to CBS Corporation's Motion for Summary
Judgment **(Excerpt of Ray Stevens Aug. 25
depo)** ................................................................... 101a

Exhibit B to Plaintiff's Response in Opposition
to CBS Corporation's Motion for Summary
Judgment **(Excerpt of Ray Stevens Aug. 26
Depo)**.................................................................. 127a

Exhibit C to Plaintiff's Response in Opposition
to CBS Corporation's Motion for Summary
Judgment **(CBS responses to Plaintiff's
Requests for Production)** ................................. 146a

CBS Corporation's Reply Memorandum in Support
of Motion for Summary Judgment ......................... 154a

Exhibit I to CBS Corporation's Reply
Memorandum in Support of Motion for
Summary Judgment............................................ 159a

Defendants International Paper Company's Motion
for Summary Judgment............................................ 186a

Defendant International Paper Company's
Memorandum in Support of Its Motion for
Summary Judgment ................................................. 189a

Exhibit A  (Affidavit of David Baldwin) to
Defendant International Paper Company's
Memorandum in Support of Its Motion for
Summary Judgment ........................................... 196a

Exhibit B  (Deposition Testimony of Ray
Stevens) to Defendant International Paper
Company's Memorandum in Support of Its
Motion for Summary Judgment ......................... 198a

                                                                **Page**

Plaintiff's Response in Opposition to Defendant
    International Paper Corporation's Motion for
    Summary Judgment ................................................    208a

 Exhibit A  to Plaintiff's Response in Opposition
 to Defendant International Paper Corporation's
 Motion for Summary Judgment **(Excerpt of**
 **Aug. 25 Deposition of Ray Stevens)** ................    216a

 Exhibit B  to Plaintiff's Response in
 Opposition to Defendant International Paper
 Corporation's Motion for Summary Judgment
 **( Excerpt of Aug. 26 Deposition of Ray**
 **Stevens)** ...............................................................    242a

 Exhibit C to Plaintiff's Response in Opposition
 to Defendant International Paper Corporation's
 Motion for Summary Judgment **(CBS**
 **responses to Plaintiff's Requests for**
 **Production)** .......................................................    261a

Defendant International Paper Company's Reply
    Memorandum in Support of Its Motion for
    Summary Judgment ................................................    269a

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | § | Civil Action No.MDL 875 |
| LIABILITY LITIGATION (NO. VI.) | § | |

---

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Taylor Stokes, Personal Representative )
of the Estate of Mr. Raymond Edward )
Stevens, )
     **Plaintiff,** )
)
v. )    Civil Action No.: 2:09-cv-91897- ER
)
AC&S, INC., )
*et al.,* )
)
)
    Defendants )

**********************************************************************

### NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT FROM JUDGMENTS OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOW COMES plaintiff Taylor Stokes, Personal representative of the Estate Raymond Stevens, by counsel, and gives Notice of Appeal to the United States Court of Appeals for the Third Circuit from decisions rendered by the United States District Court for the Eastern District of Pennsylvania, pursuant to the Federal Rules of Appellate Procedure and the local rules of the United States District Court for the Eastern District of Pennsylvania, and hereby states:

    1)    That the final judgment on the docket in the above-captioned civil action is dated July 29, 2011 [with an additional final Order dated August 12, 2011 that amends the order of July 29, 2011];

2)      That the plaintiff specifically appeals the Order entered by the United States

District Court for the Eastern District of Pennsylvania entered July 26, 2011 granting Viacom,

Inc.'s Motion for Summary Judgment; and appeals the Order dated July 26, 2011 granting

defendant International Paper Company's Motion for Summary Judgment; and the Order dated

July 29, 2011 dismissing the action with prejudice.

As this Notice of Appeal is being filed electronically, appeal costs have been mailed

postage-prepaid this 1st day of October 2013 to the United States District Court for the Eastern

District of Pennsylvania, Office of the Clerk of Court U.S. Courthouse, 601 Market Street, Room

2609, Philadelphia, PA 19106-1797.

Respectfully submitted,

October 1, 2013

BY:  /s/ Paul A. Weykamp
Attorney for the plaintiff
Paul A. Weykamp
LAW OFFICES OF PAUL A. WEYKAMP
16 Stenersen Lane
Suite 2
Hunt Valley, MD 21030
Phone: 410.584.0660
Fax: 410.584.1005
pweykamp@weykamplaw.net

### CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2013, I electronically filed the foregoing Notice of
Appeal with the Clerk of Court, which sent a notification to all defense counsel who are
registered to receive service by the ECF, and a copy was sent by electronic mail to:

/s/ Paul A. Weykamp
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND EDWARD STEVENS,          :     CONSOLIDATED UNDER
                                 :     MDL 875
        Plaintiff,               :
                                 :
    v.                           :     Transferred from the Eastern
                                 :     District of Virginia
                                 :     (Case No. 09-00092)
                                 :
3M BUSINESS PRODUCTS SALES,      :
INC., ET AL.,                    :
                                 :
                                 :     E.D. PA CIVIL ACTION NO.
                                 :     2:09-91897
    Defendants.                  :

**FILED**

JUL 25 2011

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

O R D E R

AND NOW, this 25th day of July, 2011, it is hereby ORDERED

that this Court's Order (doc. no. 69) granting Defendant Viacom,

Inc.'s Motion for Summary Judgment as unopposed is VACATED as to

Defendant Viacom, Inc.

It is further ORDERED that the Motion for Summary Judgment

of Defendant Viacom, Inc. f/k/a Westinghouse (doc. no. 49) is

GRANTED.[1]

---

[1]      Plaintiff brought this action in the Circuit Court for
the City of Newport News, Virginia alleging that Raymond Stevens
was exposed to Defendants' asbestos-containing products while
serving in the United States Navy.  Plaintiff served in the Navy
from 1960 until 1985 on various ships, including the USS Sierra,
USS Cambria, USS Simon Lake, and USS Koelsch.  Plaintiff alleges
that Raymond Stevens was exposed to asbestos-containing Micarta
panels manufactured by Westinghouse on the USS Cambria, USS Simon
Lake, and USS Koelsch.

# I.    LEGAL STANDARD

## A.    Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## B.    The Applicable Law

Mr. Stevens worked on Navy vessels on navigable waters. Plaintiff asserts that Mr. Stevens worked with Micarta panel manufactured by Viacom and Defendant agrees that non-asbestos-containing Micarta panel was approved for use on Navy vessels. Accordingly, as Mr. Stevens worked on Navy vessels on navigable waters with products produced for use on those vessels, maritime law applies to Plaintiff's claims. See Prange v. A.W. Chesterton Co., 09-91848 (E.D. Pa. July 22, 2011) (Robreno, J.) (finding that maritime law applies to "claims involving plaintiffs who were sea-based Navy workers where the allegedly defective product was produced for use on a vessel.") The United States Constitution confers federal courts with the authority to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. "Congress has embodied that power in a statute," Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513

2

U.S. 527, 531 (1995), affording district courts original
jurisdiction over "[a]ny civil case of admiralty or maritime
jurisdiction, saving to suitors in all cases all other remedies
to which they are otherwise entitled," 28 U.S.C. § 1333(1).

Maritime law is made up of an amalgam of federal and state
law. E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S.
858, 864 (1986). Substantive admiralty law applies to products
liability claims. Id. In order to establish causation for an
asbestos claim under maritime law, a plaintiff must show, for
each defendant, that "(1) he was exposed to the defendant's
product, and (2) the product was a substantial factor in causing
the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424
F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World
Indus., Inc., 21 Fed. App'x 371, 375 (6th Cir. 2001). Substantial
factor causation is determined with respect to each defendant
separately. Stark, 21 Fed. App'x at 375.

Accordingly, a mere "minimal exposure" to a defendant's
product is insufficient to establish causation. Lindstrom, 424
F.3d at 492. "Likewise, a mere showing that defendant's product
was present somewhere at plaintiff's place of work is
insufficient." Id. Rather, the plaintiff must show "'a high
enough level of exposure that an inference that the asbestos was
a substantial factor in the injury is more than conjectural.'"
Id. (quoting Harbour v. Armstrong World Indus., Inc., No. 90-
1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)). The
exposure must have been "actual" or "real", but the question of
"substantiality" is one of degree normally best left to the fact-
finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55
F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the
defect caused or contributed to the accident will foreclose as a
matter of law a finding of strict products liability." Stark, 21
F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d
1166, 1168 (9th Cir. 1988) (citing Restatement (Second) of Torts,
§ 402A (1965)).

## II.  MOTION FOR SUMMARY JUDGMENT OF VIACOM, INC.

In his deposition, Raymond Stevens was asked,

Q: Do you know the brand name or manufacturer of any of that
material that was used aboard the Koelsch, the new stuff that
went in?
A: I don't - I know some of the bulkhead - well, I don't know if
you want to call it insulation or not, but - oh, what the heck
was that thin paneling.  It come in a 4-by-8 green - Mako, Mika,

3

some kind of paneling that slipped in the thing, in the racks.
Q: Where did it slip in between?
A: Usually it was used for dividing compartments and things, and
it slipped into a rack.
Q: You think it contained asbestos?
A: I know it did.
Q: How do you know it did?  Did it have asbestos on it?
A: Uh-huh.
Q: Or did it say asbestos on the packaging?
A: On the side of it.  It wasn't packaged it was banded.  It was
light-green-looking material, and it would fit in between metal
braces and you would slide it in there and sit it around the
corners, you know, wherever you had to go bend it in and stuff
like that.

(Stevens Dep., August 25, 2010 at 123-24.) He testified that
"Miko" or "Mako" manufactured the product. (Id. at 125.) Later in
his deposition, Mr. Stevens testified that he never saw the word
asbestos on the bulkhead. (Id. at 285.) Mr. Stevens testified
that he saw individuals installing this bulkhead panel on the
Koelsch "probably on a daily basis" until the job was completed.
(Id. at 283.) Mr. Stevens testified that he personally handled
and cut the panel, although he did not do so on a daily basis.
(Id. at 284.) Mr. Stevens testified that he worked around others
working with bulkhead panels on the Cambria and Simon Lake, which
was the same type of panel that he worked with and saw on the
Koelsch. (Id. at 288.)

Defendant relies on the affidavit of David Baldwin, who was
employed by Westinghouse from 1950 until 1987, and who was
General Manager of Westinghouse's Decorative Micarta Division
from 1965 until 1975. (Def.'s Ex. F. ¶¶ 1 & 2.) Mr. Baldwin avers
that he "understand[s] that plaintiffs in some cases have alleged
that asbestos-containing Westinghouse Fire Retardant Decorative
Micarta was used on board U.S. Naval vessels," but that "[b]ased
on [his] personal knowledge, asbestos-containing Westinghouse
Fire Retardant Decorative Micarta was never approved for use on
U.S. Naval vessels" and that "[b]ased on [his] personal
knowledge, non-asbestos, paper-based Micarta and similar
decorative laminates made by Westinghouse and its competitors
were commonly used aboard U.S. Naval vessels." (Id. ¶¶ 3-5.)

Defendant then cites to letters and MILSPECs demonstrating
that asbestos-containing Micarta panel was never approved for use
on Navy ships. (Def.'s Reply at 2-3.) An internal letter from the
Micarta Division of Westinghouse dated January 30, 1967,
indicated that while Westinghouse attempted to get Micarta

4

approved for use on Navy ships, Micarta did not meet the physical specifications. (Def.'s Ex. I.) The MILSPECs were revised in 1974, but revised MILSPEC 3.14.3 provided that, "asbestos is prohibited for use in the construction of laminates." (Id.)

In summary, in his deposition, Mr. Stevens testified that he worked with and around bulkhead panel on the USS Koelsch. He worked around other workers installing this panel on the USS Simon Lake and USS Cambria. He identified the brand of this panel as "Mako," "Miko," "Mikada," or "Mickeda." He testified that he knew that the panel contained asbestos because the side of the package said that it contained asbestos. However, later in his deposition, Mr. Stevens testified that he never actually saw the word asbestos on the bulkheads.

Defendant asserts that Westinghouse asbestos-containing Micarta was never approved for use on Navy vessels. David Baldwin, who was General Manager of Westinghouse's Decorative Micarta Division, avers that non-asbestos, paper-based Micarta and other similar laminates were commonly used aboard Navy ships. Defendant cites to internal letters at Westinghouse indicating that asbestos-containing Micarta did not comply with Navy MILSPECs. MILSPEC 3.14.3 provided that, "asbestos is prohibited for use in the construction of laminates."

The parties agree that some Micarta panel contained asbestos; however, they disagree as to where this asbestos-containing Micarta panel could have been located. Mr. Stevens testified that "Mako,""Miko," "Mikada," or "Mickeda" panel was present on the USS Simon Lake, USS Cambria, and USS Koelsch. He testified inconsistently as to whether he knew that this panel contained asbestos. Plaintiff cannot create an issue of material fact by citing to inconsistencies in Mr. Stevens testimony. As Plaintiff has failed to present evidence to controvert Defendant's evidence that Micarta asbestos-containing panel was not approved for use on Navy ships, Defendant's Motion for Summary Judgment is granted. See Brown v. Asbestos Defendants, et al., 10-60090 (doc. no. 121) (July 1, 2011) (Robreno, J.) (granting defendant's motion for summary judgment in part where defendant presented evidence that it did not manufacture, distribute, or sell brakes for the aircraft at issue).

Plaintiff has not opposed Defendant's Motion for Summary Judgment as to whether exposure to gun mounts manufactured by Westinghouse contributed to Mr. Stevens' development of an asbestos-related disease.  Therefore, Defendant's Motion for Summary Judgment is also granted as to any alleged exposure to Westinghouse gun mounts.

ENTERED

JUL 2 6 2011

CLERK OF COURT

6

E.D. PA CIVIL ACTION NO. 2:09-91897

**AND IT IS SO ORDERED.**

EDUARDO C. ROBRENO, J.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND EDWARD STEVENS,          :        CONSOLIDATED UNDER
                                 :        MDL 875
       Plaintiff,                :
                                 :
                                 :        Transferred from the Eastern
                                 :        District of Virginia
       v.                        :        (Case No. 09-00092)
                                 :
3M BUSINESS PRODUCTS SALES,      :
INC., ET AL.,                    :
                                 :        E.D. PA CIVIL ACTION NO.
                                 :        2:09-91897
       Defendants.               :

**FILED:**
JUL 26 2011
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## O R D E R

AND NOW, this **25th** day of **July, 2011**, it is hereby **ORDERED**
that this Court's Order (doc. no. 69) granting Defendant
International Paper Corp.'s Motion for Summary Judgment as
unopposed is **VACATED** as to Defendant International Paper Corp.

It is further **ORDERED** that the Motion for Summary Judgment
of Defendant International Paper Corp. (doc. no. 48) is **GRANTED**.[1]

---

[1]    Plaintiff brought this action in the Circuit Court for
the City of Newport News, Virginia alleging that Raymond Stevens
was exposed to Defendants' asbestos-containing products while
serving in the United States Navy. Plaintiff served in the Navy
from 1960 until 1985 on various ships, including the USS Sierra,
USS Cambria, USS Simon Lake, and USS Koelsch. Plaintiff alleges
that Raymond Stevens was exposed to asbestos-containing Micarta
panels manufactured by Westinghouse on the USS Cambria, USS Simon
Lake, and USS Koelsch. Plaintiff alleges that International
Paper Corp.'s predecessor, U.S. Plywood, distributed Westinghouse
Micarta panels.

## I.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B.   The Applicable Law

Mr. Stevens worked on Navy vessels on navigable waters. Plaintiff asserts that Mr. Stevens worked with Micarta panel manufactured by Viacom and Defendant agrees that non-asbestos-containing Micarta panel was approved for use on Navy vessels. Accordingly, as Mr. Stevens worked on Navy vessels on navigable waters with products produced for use on those vessels, maritime law applies to Plaintiff's claims. See Prange v. A.W. Chesterton Co., 09-91848 (E.D. Pa. July 22, 2011) (Robreno, J.) (finding that maritime law applies to "claims involving plaintiffs who were sea-based Navy workers where the allegedly defective product was produced for use on a vessel.") The United States Constitution confers federal courts with the authority to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. "Congress has embodied that power in a statute," Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513

2

U.S. 527, 531 (1995), affording district courts original
jurisdiction over "[a]ny civil case of admiralty or maritime
jurisdiction, saving to suitors in all cases all other remedies
to which they are otherwise entitled," 28 U.S.C. § 1333(1).

Maritime law is made up of an amalgam of federal and state
law. E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S.
858, 864 (1986). Substantive admiralty law applies to products
liability claims. Id. In order to establish causation for an
asbestos claim under maritime law, a plaintiff must show, for
each defendant, that "(1) he was exposed to the defendant's
product, and (2) the product was a substantial factor in causing
the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424
F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World
Indus., Inc., 21 Fed. App'x 371, 375 (6th Cir. 2001). Substantial
factor causation is determined with respect to each defendant
separately. Stark, 21 Fed. App'x at 375.

Accordingly, a mere "minimal exposure" to a defendant's
product is insufficient to establish causation. Lindstrom, 424
F.3d at 492. "Likewise, a mere showing that defendant's product
was present somewhere at plaintiff's place of work is
insufficient." Id. Rather, the plaintiff must show "'a high
enough level of exposure that an inference that the asbestos was
a substantial factor in the injury is more than conjectural.'"
Id. (quoting Harbour v. Armstrong World Indus., Inc., No. 90-
1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)). The
exposure must have been "actual" or "real", but the question of
"substantiality" is one of degree normally best left to the fact-
finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55
F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the
defect caused or contributed to the accident will foreclose as a
matter of law a finding of strict products liability." Stark, 21
F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d
1166, 1168 (9th Cir. 1988) (citing Restatement (Second) of Torts,
§ 402A (1965)).

## II.  MOTION FOR SUMMARY JUDGMENT OF INTERNATIONAL PAPER CORP.

At oral argument, Defendant International Paper Corp.
asserted that its fate depended on the outcome of Viacom, Inc.'s
Motion for Summary Judgment.  This is because International Paper
Corp.'s predecessor, U.S. Plywood, distributed Westinghouse
Micarta panels, which Mr. Stevens was allegedly exposed to.  As
noted in the decision addressing Viacom, Inc.'s Motion for
Summary Judgment, Mr. Stevens alleged that he worked with Micarta
panels, but testified inconsistently as to whether knew that

3

these panels contained asbestos.

Defendant asserted that Westinghouse asbestos-containing
Micarta was never approved for use on Navy vessels. David
Baldwin, who was General Manager of Westinghouse's Decorative
Micarta Division, avers that non-asbestos, paper-based Micarta
and other similar laminates were commonly used aboard Navy ships.
Defendant cites to internal letters at Westinghouse indicating
that asbestos-containing Micarta did not comply with Navy
MILSPECs. MILSPEC 3.14.3 provided that, "asbestos is prohibited
for use in the construction of laminates."

Plaintiff cannot create an issue of material fact by citing
to inconsistencies in Mr. Stevens testimony. As Plaintiff has
failed to present evidence to controvert Defendant's evidence
that Micarta asbestos-containing panel was not approved for use
on Navy ships, Defendant's Motion for Summary Judgment is
granted. See Brown v. Asbestos Defendants, et al., 10-60090 (doc.
no. 121) (July 1, 2011) (Robreno, J.) (granting defendant's
motion for summary judgment in part where defendant presented
evidence that it did not manufacture, distribute, or sell brakes
for the aircraft at issue). As Plaintiff has failed to raise a
genuine issue of material fact as to whether Mr. Stevens was
exposed to asbestos from Micarta panel, International Paper
Corp., the distributor of those panels, it entitled to summary
judgment.

4

E.D. PA CIVIL ACTION NO. 2:09-91897

AND IT IS SO ORDERED.

EDUARDO C. ROBRENO, J.

5

-14a-